UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Criminal No. 24- cr 10319 NMG |
| | ) |
| v. | ) Violations: |
| | ) |
| RAYTHEON COMPANY, | ) Counts One and Two: |
| | ) Major Fraud Against the United States |
| Defendant. | ) (18 U.S.C. § 1031) |
| | ) |
| | ) |

INFORMATION

At all times relevant to this Information:

General Allegations

1.      The defendant, RAYTHEON COMPANY ("RAYTHEON"), was a United States

defense contractor headquartered in Waltham, Massachusetts.  RAYTHEON was publicly traded

on the New York Stock Exchange.

2.      Partner-1 was a foreign authority.

General Background on Military Contracts

3.      In March 2013, the U.S. Army awarded RAYTHEON contract number XXXXXX-

XX-X--0069, pursuant to which RAYTHEON would sell three PATRIOT[1] missile fire units to the

United States for the benefit of Partner-1 (the "3-Lot Contract").

4.      In 2017, the U.S. Air Force awarded RAYTHEON contract number XXXXXX-

XX-X--0002, pursuant to which RAYTHEON would continue operating and maintaining the

[1] PATRIOT is an acronym for Phased Array Tracking Radar to Intercept On Target.

Surveillance Radar Program ("SRP") for the benefit of Partner-1 (the "Follow-on Support 2 Contract" or "FOS2 Contract") (together with the 3-Lot Contract, the "Contracts").

5.      The Contracts were sole source, firm fixed price contracts.  As such, the Contracts were not open to competitive bidding because only RAYTHEON provided the product or service. RAYTHEON performed the Contracts at a set price that RAYTHEON negotiated with the U.S. Army and U.S. Air Force in advance.  If the actual costs for RAYTHEON to perform were greater than those negotiated before the Contracts were awarded, then RAYTHEON would earn less profit than negotiated.  If, however, the actual costs were less than those negotiated before the Contracts were awarded, then RAYTHEON would be permitted to keep those savings as additional profit.

6.      Before finalizing the Contracts, the U.S. Army and U.S. Air Force (collectively, the "Department of Defense") required RAYTHEON to provide certifications pursuant to the Truthful Cost or Pricing Data Act, formerly known as the Truth in Negotiations Act ("TINA"), 10 U.S.C. §§ 3701-3708; 41 U.S.C. §§ 3501-3508.  TINA required contractors to certify the accuracy and completeness of cost and pricing data provided to the Department of Defense in connection with certain contract proposals.  In negotiating a fair price for the Contracts, the Department of Defense relied on RAYTHEON to provide current, accurate, and complete information and cost and pricing data, and to provide truthful certifications pursuant to TINA.

<u>The Schemes to Defraud</u>

7.      From in or about March 2012 through at least in or about March 2013, and from in or about June 2017 through at least in or around October 2018, in the District of Massachusetts and elsewhere, RAYTHEON employees, acting in the scope of their employment and at least in part for the benefit of RAYTHEON, knowingly and with the intent to defraud the United States made false and fraudulent representations to the Department of Defense regarding the expected

2

costs of performing the Contracts, in order to mislead the Department of Defense into awarding the Contracts at inflated prices.

<u>The 3-Lot Contract Fraud Scheme</u>

8.      During the 3-Lot Contract negotiations in or about 2012 and 2013, RAYTHEON, acting through one or more of its employees, knowingly and with the intent to defraud made multiple false and misleading statements to the U.S. Army.

9.      In or about early 2012, RAYTHEON proposed to the U.S. Army that RAYTHEON submit the 3-Lot Contract proposal using a pricing approach that relied on the same cost and pricing data RAYTHEON used for an earlier PATRIOT contract for the benefit of Partner-1 (the "4-Lot Contract").  The U.S. Army accepted RAYTHEON's proposed pricing approach.

10.     On or about March 6, 2012, RAYTHEON submitted a proposal for the 3-Lot Contract that significantly overstated the costs RAYTHEON expected to incur.  RAYTHEON failed to disclose that RAYTHEON had incurred lower-than-expected costs in implementing the ongoing 4-Lot Contract.

11.     In or about October 2012, in order to move forward with price negotiations on the 3-Lot Contract, RAYTHEON submitted a false TINA certification to the U.S. Army. RAYTHEON falsely attested that RAYTHEON had provided "accurate, complete, and current" cost and pricing data for the 4-Lot Contract, which RAYTHEON relied upon in pricing the 3-Lot Contract, as of October 12, 2012.  The certification was false because, in fact, RAYTHEON knew that RAYTHEON's costs for implementing the 4-Lot Contract were running significantly below the cost and pricing data provided to the U.S. Army.

12.     On or about March 27, 2013, the U.S. Army and RAYTHEON agreed on a price of $618,920,129 for the 3-Lot Contract.  Before awarding the final contract, the U.S. Army required 3

RAYTHEON to provide an updated TINA certificate confirming that RAYTHEON's cost and pricing data was current, accurate, and complete as of the date of the agreement.

13.     On or about March 29, 2013, RAYTHEON submitted a second false TINA certification to the U.S. Army.  RAYTHEON falsely attested that RAYTHEON had provided "accurate, complete, and current" cost and pricing data for the 4-Lot Contract as of March 27, 2013.  This certification was false because, in fact, RAYTHEON knew that the cost and pricing data materially overstated the costs RAYTHEON was incurring on the ongoing 4-Lot Contract, and expected to incur in implementing the 3-Lot Contract.

14.     On or about March 29, 2013, after submitting the fraudulent TINA certification, in an email, a RAYTHEON employee reaffirmed the reasonableness of RAYTHEON's inflated 3-Lot Contract proposal, and further attested that RAYTHEON's expected costs of implementing the 3-Lot Contract had increased, when in fact, the company's costs had decreased.

15.      In reliance on RAYTHEON's false and fraudulent statements, the U.S. Army agreed to a 3-Lot Contract price that was fraudulently inflated by $100,131,000.

The FOS2 Contract Fraud Scheme

16.     Likewise, during the FOS2 Contract negotiations in or about 2017, and during the first year of the contract's execution, in or about 2018, RAYTHEON, acting through one or more of its employees, knowingly and with the intent to defraud made multiple false and misleading statements to the U.S. Air Force.

17.     For example, on or about December 9, 2017, RAYTHEON submitted a detailed memorandum to the U.S. Air Force, in which RAYTHEON argued that it was necessary to provide SRP site employees lucrative compensation packages in order to maintain adequate staffing at the

site (the "Emolument Justification Memorandum"). In fact, RAYTHEON was secretly preparing to reduce the pay of those SRP site employees in order to improve the company's profitability.

18.     In subsequent meetings with U.S. Air Force personnel, RAYTHEON reiterated the false arguments put forth in the Emolument Justification Memorandum, while concealing that RAYTHEON actually intended to reduce the compensation paid to SRP site employees after the contract was awarded.

19.     On or about December 22, 2017, RAYTHEON submitted a false TINA certification to the U.S. Air Force. RAYTHEON falsely represented that the cost and pricing data submitted in connection with the FOS2 Contract proposal was "accurate, complete, and current" as of December 15, 2017. This certification was false, because, in fact, RAYTHEON knew that it materially overstated the costs RAYTHEON expected to incur in performing the FOS2 Contract.

20.     After the U.S. Air Force awarded RAYTHEON the FOS2 Contract, RAYTHEON took steps to implement the pre-planned compensation cuts for certain SRP site employees, while actively concealing those cuts from the U.S. Air Force. For example, during a contract review meeting on or about October 12, 2018, a RAYTHEON employee falsely attributed employee attrition at the SRP site to retirement, health issues, and a desire by some employees to return home to their families, but deliberately failed to disclose that employees were leaving the site due to the reduced compensation packages RAYTHEON had implemented.

21.     In reliance on RAYTHEON's false and fraudulent statements, the U.S. Air Force agreed to a FOS2 Contract price that was fraudulently inflated by $11,072,009.

COUNT ONE
Major Fraud Against the United States
(18 U.S.C. § 1031(a)(1))

The Acting United States Attorney and the Chief of the Fraud Section charge:

22.    The Acting United States Attorney and the Chief of the Fraud Section re-allege and incorporate by reference paragraphs 1 through 15 of this Information.

23.    From in or about March 2012 through at least in or about March 2013, in the District of Massachusetts and elsewhere, the defendant,

RAYTHEON COMPANY,

in a contract, subcontract, and other form of Federal assistance, and in any procurement of property and services as a prime contractor with the United States, where the value of such contract, subcontract, and other form of Federal assistance, and any constituent part thereof, was $1,000,000 or more, knowingly executed and attempted to execute a scheme and artifice with the intent to defraud the United States in the award of the 3-Lot Contract.

All in violation of Title 18, United States Code, Section 1031(a)(1).

COUNT TWO
Major Fraud Against the United States
(18 U.S.C. § 1031(a)(1))

The Acting United States Attorney and the Chief of the Fraud Section charge:

24.     The Acting United States Attorney and the Chief of the Fraud Section re-allege and incorporate by reference paragraphs 1 through 7 and 16 through 21 of this Information.

25.     From in or about June 2017 through at least in or about October 2018, within the District of Massachusetts and elsewhere, the defendant,

RAYTHEON COMPANY,

in any contract, subcontract, and other form of Federal assistance, and in any procurement of property and services as a prime contractor with the United States where the value of such contract, subcontract, and other form of Federal assistance, and any constituent part thereof, was $1,000,000 or more, knowingly executed and attempted to execute a scheme and artifice with the intent to defraud the United States in the award of the FOS2 Contract.

All in violation of Title 18, United States Code, Section 1031(a)(1).


JOSHUA S. LEVY                           GLENN S. LEON
Acting United States Attorney            Chief, Criminal Division,
                                         Fraud Section

By: _____      By: _____
Brian M. LaMacchia                       Laura Connelly
Benjamin A. Saltzman                     Tamara Livshiz
Assistant U.S. Attorneys                 Trial Attorneys


Date: October 16, 2024

7