UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | Criminal No.  24- cr10319 NMG |
| v. | ) | |
| | ) | |
| RAYTHEON COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFERRED PROSECUTION AGREEMENT

Defendant Raytheon Company (the "Company"), pursuant to authority granted by the Company's Board of Directors reflected in Attachment B, and the United States Department of Justice, Criminal Division, Fraud Section (the "Fraud Section") and the United States Attorney's Office for the District of Massachusetts (the "Office"), enter into this deferred prosecution agreement (the "Agreement"). RTX Corporation ("RTX"), which is not a defendant in this matter, also agrees, pursuant to the authority granted by RTX's Board of Directors, to certain terms and obligations of the Agreement as described below. The terms and conditions of this Agreement are as follows:

### Criminal Information and Acceptance of Responsibility

1.     The Company acknowledges and agrees that the Fraud Section and the Office will file the attached two count criminal Information in the United States District Court for the District of Massachusetts charging the Company with Major Fraud Against the United States, in violation of 18 United States Code Section 1031.

1

In so doing, the Company: (a) knowingly waives any right it may have to indictment on these charges, as well as all rights to a speedy trial pursuant to the Sixth Amendment to the United States Constitution, Title 18, United States Code, Section 3161, and Federal Rule of Criminal Procedure 48(b);  (b) knowingly waives any objection with respect to venue to any charges by the United States arising out of the conduct described in the Statement of Facts attached hereto as Attachment A ("Statement of Facts") and consents to the filing of the Information, as provided under the terms of this Agreement, in the United States District Court for the District of Massachusetts; and (c) agrees that the charges in the Information and any charges arising from the conduct described in the Statement of Facts are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement.  The Fraud Section and the Office agree to defer prosecution of the Company pursuant to the terms and conditions described below.

2.      The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as charged in the Information, and as set forth in the Statement of Facts, and that the allegations described in the Information and the facts described in the Statement of Facts are true and accurate.  The Company and RTX agree that, effective as of the date the Company signs this Agreement, in any prosecution that is deferred by this Agreement, the Company and RTX will not dispute the Statement of Facts set forth in this Agreement, and, in any such prosecution, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the government on cross-examination; and (c) evidence at any sentencing hearing or other hearing.  In addition, in connection therewith, the Company and RTX agree not to assert any claim under the United

2

States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules

of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines, or any other

federal rule that the Statement of Facts should be suppressed or is otherwise inadmissible as

evidence in any form.

### Term of the Agreement

3.      This Agreement is effective for a period beginning on the date on which the

Information is filed and ending three years from the later of the date on which the Information is

filed or the date on which the independent compliance monitor (the "Monitor") is retained by the

Company, as described in Paragraphs 14 through 17 below (the "Term").  The Company and

RTX agree, however, that, in the event the Fraud Section and the Office determine, in their sole

discretion, that the Company or RTX has knowingly violated any provision of this Agreement or

has failed to completely perform or fulfill each of the Company's or RTX's obligations under

this Agreement, an extension or extensions of the Term may be imposed by the Fraud Section

and the Office, in their sole discretion, for up to a total additional time period of one year,

without prejudice to the Fraud Section and the Office's right to proceed as provided in

Paragraphs 20 through 24 below.  Any extension of the Agreement extends all terms of this

Agreement, including the terms of the monitorship in Attachment D, for an equivalent period.

Conversely, in the event the Fraud Section and the Office find, in their sole discretion, that there

exists a change in circumstances sufficient to eliminate the need for the monitorship in

Attachment D, and that the other provisions of this Agreement have been satisfied, the

Agreement may be terminated early.

**Relevant Considerations**

4.      The Fraud Section and the Office enter into this Agreement based on the individual facts and circumstances presented by this case, including:

a.      The nature and seriousness of the offense conduct, as described in the Statement of Facts, including two separate schemes between 2012 and 2018 to defraud the U.S. government in contract negotiations for Patriot Missile fire units and sustainment of a surveillance radar, fraudulently inflating the cost of those contracts and thereby causing over $111 million in pecuniary harm to the U.S. government;

b.      The Company did not receive voluntary disclosure credit pursuant to the Criminal Division Corporate Enforcement and Voluntary Self-Disclosure Policy ("Criminal Division CEP"), or pursuant to the United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 8C2.5(g)(1), because it did not voluntarily and timely disclose to the Fraud Section and the Office the conduct described in the Statement of Facts;

c.      The Company received credit for its cooperation with the Fraud Section and the Office's investigation pursuant to U.S.S.G. § 8C2.5(g)(2) because it cooperated with their investigation and demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct; the Company also received credit for its cooperation and remediation pursuant to the Criminal Division CEP.  Such cooperation included, among other things (i) facilitating interviews with current and former employees; (ii) providing information obtained through its internal investigation, which allowed the government to preserve and obtain evidence as part of its own independent investigation; (iii) making detailed presentations to the Fraud Section and the Office; (iv) proactively identifying key documents in the voluminous materials collected and produced by the Company, (v) engaging experts to conduct financial analyses and (vi)

4

demonstrating its willingness to disclose all relevant facts by analyzing whether the crime-fraud exception applied to certain potentially privileged documents and releasing the documents that it deemed fell within the exception. However, in the initial phases prior to March 2022, the Company's cooperation was limited by unreasonably slow document productions;

d.      The Company provided to the Fraud Section and the Office all relevant facts known to it, including information about the individuals involved in the conduct described in the attached Statement of Facts and conduct disclosed to the Fraud Section and the Office prior to the Agreement;

e.      The Company also received credit pursuant to the Criminal Division CEP because it engaged in timely and appropriate remedial measures, including: (i) terminating employees who remained at the Company who were responsible for the misconduct; (ii) establishing a broad awareness campaign for the Truthful Cost or Pricing Data Act, formerly known as the Truth in Negotiations Act ("TINA"), 10 U.S.C. §§ 3701-3708; 41 U.S.C. §§ 3501-3508; (iii) developing and implementing policies, procedures, and controls relating to TINA compliance; and (iv) engaging additional resources with appropriate expertise to evaluate and test the new policies, procedures, and controls relating to TINA compliance;

f.      The Company has enhanced and has committed to continuing to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment C to this Agreement ("Corporate Compliance Program");

g.      Based on the state of the Company's compliance program and the progress of its remediation, including the fact that the Company's compliance program and internal controls have not been fully implemented or tested to demonstrate that they would prevent and detect similar

misconduct in the future, the Fraud Section and the Office have determined that an independent compliance monitor (the "Monitor") is necessary as set forth in Paragraphs 14 through 17 and Attachment D to this Agreement ("Independent Compliance Monitor");

h.      The Company does not have a prior history of criminal actions;

i.      The Company has prior civil resolutions with authorities in the United States, including a consent agreement with the Department of State in 2013 concerning civil International Traffic in Arms Regulations ("ITAR") and Arms Export Control Act violations, a civil settlement with the Environmental Protection Agency in 2007 concerning payments to clean up contamination sites, and a resolution with the Securities and Exchange Commission in 2006 concerning false and misleading disclosures and improper accounting practices;

j.      The Company is resolving concurrently through a Deferred Prosecution Agreement a separate investigation by the Department's Criminal and National Security Divisions and the U.S. Attorney's Office for the Eastern District of New York concerning Foreign Corrupt Practices Act and ITAR violations between in or around 2012 and in or around 2016;

k.      The Company has agreed to resolve concurrently a separate investigation by the U.S. Department of Justice, Civil Division, Fraud Section ("DOJ Civil") and the Office relating, in part, to the conduct described in the Statement of Facts;

l.      The Company has agreed to resolve concurrently an SEC investigation concerning the same Foreign Corrupt Practices Act matter being resolved with the Department's Criminal Division and the U.S. Attorney's Office for the Eastern District of New York;

m.      The Company has agreed to continue to cooperate with the Fraud Section, the Office, and DOJ Civil in any ongoing investigation or prosecution as described in Paragraph 5 below;

n.      Accordingly, after considering (a) through (m) above, the Fraud Section and the Office believe that the appropriate resolution in this case is a Deferred Prosecution Agreement with the Company; a criminal monetary penalty of $146,787,972, which reflects a discount of 25 percent off the 10th percentile of the otherwise-applicable U.S. Sentencing Guidelines fine range; restitution of $111,203,009, which will be satisfied by payment of victim damages to DOJ Civil in a concurrent resolution; and the imposition of an independent compliance monitor, as set forth in Attachment D.

### Ongoing Cooperation and Disclosure Requirements

5.      The Company and RTX shall cooperate fully with the Fraud Section and the Office in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the Fraud Section or the Office at any time during the Term until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term.   At the request of the Fraud Section or the Office, the Company and RTX shall also cooperate fully with other domestic or foreign law enforcement and regulatory authorities and agencies in any investigation of RTX or the Company, its affiliates, or any of its present or former officers, directors, employees, agents, and consultants, or any other party, in any and all matters relating to the conduct described in this Agreement and the Statement of Facts and other conduct under investigation by the Fraud Section or the Office or any other component of the Department of Justice at any time during the Term.  The Company and RTX's cooperation pursuant to this Paragraph is subject to applicable law and regulations, as well as valid claims of attorney-client privilege or attorney work product doctrine; however, the Company and RTX must provide to the Fraud Section and the Office a log of any information or cooperation that is not provided

based on an assertion of law, regulation, or privilege, and the Company and RTX bear the burden of establishing the validity of any such assertion. The Company and RTX agree that their cooperation pursuant to this paragraph shall include, but not be limited to, the following:

       a.       The Company and RTX represent that they have timely and truthfully disclosed all factual information with respect to their activities, those of their subsidiaries and affiliates, and those of its present and former directors, officers, employees, agents, and consultants relating to the conduct described in this Agreement and the Statement of Facts as well as any other conduct under investigation by the Fraud Section or the Office about which the Company and/or RTX have any knowledge. The Company and RTX further agree that they shall promptly and truthfully disclose all factual information with respect to their activities, those of their affiliates, and those of their present and former directors, officers, employees, agents, and consultants about which the Company and/or RTX shall gain any knowledge or about which the Fraud Section or the Office may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company and RTX to provide to the Fraud Section and the Office, upon request, any document, record or other tangible evidence about which the Fraud Section or the Office may inquire of the Company and RTX including evidence that is responsive to any requests made prior to the execution of this Agreement.

       b.       Upon request of the Fraud Section and the Office, the Company and RTX shall designate knowledgeable employees, agents or attorneys to provide to the Fraud Section and the Office the information and materials described in Paragraph 5(a) above on behalf of the Company and RTX. It is further understood that the Company and RTX must at all times provide complete, truthful, and accurate information.

      c.      The Company and RTX shall use their best efforts to make available for interviews or testimony, as requested by the Fraud Section and the Office, present or former officers, directors, employees, agents and consultants of the Company and RTX.  This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation under this Paragraph shall include identification of witnesses who, to the knowledge of the Company and RTX, may have material information regarding the matters under investigation.

      d.      With respect to any information, testimony, documents, records or other tangible evidence provided to the Fraud Section and the Office pursuant to this Agreement, the Company and RTX consent to any and all disclosures, subject to applicable laws and regulations, to other governmental authorities, including United States authorities and those of a foreign government of such materials as the Fraud Section and the Office, in their sole discretion, shall deem appropriate.

6.      In addition to the obligations in Paragraph 5, during the Term, should the Company or RTX learn of any evidence or allegation of a violation of U.S. anti-fraud laws or the Truthful Cost or Pricing Data Act, formerly known as TINA, 10 U.S.C. §§ 3701-3708; 41 U.S.C. §§ 3501-3508 relating to the Company, then the Company or RTX shall promptly report such evidence or allegation to the Fraud Section and the Office.

**<u>Payment of Monetary Penalty</u>**

7.      The Fraud Section, the Office, and the Company agree that application of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines") to determine the applicable fine range yields the following analysis:

9

a.   The 2023 USSG are applicable to this matter.

b.   <u>Offense Level</u>.  Based upon USSG § 2B1.1, the total offense level is 32. Calculated as follows:

| | | | |
|---|---|---|---|
| (a) | | Base Offense Level | 6 |
| (b)(2) | | Loss Amount Greater than $65,000,000 | +24 |
| (b)(10) | | Sophisticated Means | +2 |
| **TOTAL** | | | 32 |

c.   <u>Base Fine.  Based upon USSG § 8C2.4(a)(3), the base fine is $111,203,009</u>

d.   <u>Culpability Score</u>.  Based upon USSG § 8C2.5, the culpability score is 8, calculated as follows:

| | | |
|---|---|---|
| (a) | Base Culpability Score | 5 |
| (b)(1) | the unit of the organization within which the offense was committed had 5,000 or more employees and tolerance of the offense by substantial authority personnel was pervasive throughout such unit | +5 |
| (g)(2) | The organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct | - 2 |
| **TOTAL** | | 8 |

<u>Calculation of Fine Range</u>:

| | |
|---|---|
| Base Fine | $111,203,009 |
| Multipliers | 1.6 (min)/ 3.2 (max) |
| Fine Range | $177,924,814 / $355,849,629 |

8.      The Fraud Section, the Office, and the Company agree, based on the application of the Sentencing Guidelines, that the appropriate criminal penalty is $146,787,972.  This reflects a 25% discount off the 10th percentile of the Sentencing Guidelines fine range.

9.      The Company agrees to pay a monetary penalty in the amount of $146,787,972 to the United States Treasury no later than ten business days after the Agreement is fully executed. The Company, the Fraud Section, and the Office agree that this penalty is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Paragraph 4 of this Agreement.  The $146,787,972 penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Fraud Section and the Office that $146,787,972 is the maximum penalty that may be imposed in any future prosecution, and the Fraud Section and the Office are not precluded from arguing in any future prosecution that the Court should impose a higher fine, although the Fraud Section and the Office agree that under those circumstances, they will recommend to the Court that any amount paid under this Agreement should be offset against any fine the Court imposes as part of a future judgment.  The Company and RTX acknowledge that no tax deduction may be sought in connection with the payment of any part of this $146,787,972 penalty.  The Company and RTX shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the penalty or disgorgement amounts that the Company pays pursuant to this Agreement, or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in the Statement of Facts.

### Payment of U.S. Department of Defense Compensation Amount

10.     The Company and RTX agree to pay a total amount of $111,203,009 in compensation to the U.S. Department of Defense ("DOD Compensation Amount").  The DOD

Compensation Amount shall be offset by any payments made by the Company and RTX to the Department of Justice, Civil Division, Fraud Section as set forth in paragraph 4(n) above, for the conduct described in the Statement of Facts toward reducing the Company's and RTX's obligations to pay restitution under this Agreement.  The Company and RTX shall pay any remaining amounts due under the DOD Compensation Amount to the U.S. Department of Defense by the end of the Term and shall provide documentation to the Fraud Section and the Office evidencing the amounts paid.

### Conditional Release from Liability

11.     Subject to Paragraphs 20 through 24, the Fraud Section and the Office agree, except as provided in this Agreement, that they will not bring any criminal or civil case against the Company, RTX, or any of their subsidiaries and affiliates relating to any of the conduct described in the Statement of Facts or the criminal Information filed pursuant to this Agreement. The Fraud Section and the Office, however, may use any information related to the conduct described in the Statement of Facts against the Company, RTX, or any of their subsidiaries and affiliates:  (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code.

      a.     This Agreement does not provide any protection against prosecution for any future conduct by the Company, RTX, or any of their subsidiaries or affiliates.

      b.     In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company, RTX, or any of their subsidiaries or affiliates.

### Corporate Compliance Program

12.     The Company and RTX represent that they have implemented and will continue to implement a compliance and ethics program at the Company designed to prevent and detect violations of the U.S. anti-fraud laws and the Truthful Cost or Pricing Data Act, formerly known as TINA, 10 U.S.C. §§ 3701-3708; 41 U.S.C. §§ 3501-3508 throughout the Company's operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include interacting with government officials, including, but not limited to, the minimum elements set forth in Attachment C.  On the date the Term expires, the Company, by its President and Chief Compliance Officer, and RTX, by its Chief Executive Officer and Chief Compliance Officer, will certify to the Fraud Section and the Office, in the form of executing the document attached as Attachment F to this Agreement, that the Company has met its compliance obligations pursuant to this Agreement. This certification will be deemed a material statement and representation by the Company and RTX to the executive branch of the United States for purposes of 18 U.S.C. § 1001, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

13.     In order to address any deficiencies in its internal controls, policies, and procedures, the Company and RTX represent that they have undertaken, and will continue to undertake in the future, in a manner consistent with all of their obligations under this Agreement, a review of the Company's existing internal controls, policies, and procedures regarding compliance with the U.S. anti-fraud laws and the Truthful Cost or Pricing Data Act, formerly known as TINA, 10 U.S.C. §§ 3701-3708; 41 U.S.C. §§ 3501-3508. Where necessary and appropriate, the Company and RTX agree to adopt a new compliance program at the Company, or to modify its existing one, including internal controls, compliance policies, and procedures in

order to ensure that the Company maintains a rigorous compliance program that incorporates relevant internal controls, as well as policies and procedures designed to effectively detect and deter violations of the U.S. anti-fraud laws and the Truthful Cost or Pricing Data Act, formerly known as TINA, 10 U.S.C. §§ 3701-3708; 41 U.S.C. §§ 3501-3508.  The compliance program, including the internal controls system will include, but not be limited to, the minimum elements set forth in Attachment C.  In assessing the Company's compliance program, the Fraud Section and the Office, in their sole discretion, may consider the Monitor's certification decision.

### Independent Compliance Monitor

14.     Promptly after the Fraud Section and the Office's selection pursuant to Paragraph 16 below, the Company agrees to retain a Monitor for the term specified in Paragraph 17.  The Monitor's duties and authority, and the obligations of the Company and RTX with respect to the Monitor and the Fraud Section and the Office, are set forth in Attachment D, which is incorporated by reference into this Agreement.  Within twenty (20) business days after the date of execution of this Agreement, the Company shall submit a written proposal identifying the monitor candidates, and, at a minimum, providing the following:

a.      a description of each candidate's qualifications and credentials in support of the evaluative considerations and factors listed below;

b.      a written certification by the Company and RTX that they will not employ or be affiliated with the monitor for a period of not less than three years from the date of the termination of the monitorship;

c.      a written certification by each of the candidates that he/she is not a current or recent (i.e., within the prior two years) employee, agent, or representative of the Company or

RTX and holds no interest in, and has no relationship with, the Company, RTX, their subsidiaries, affiliates, or related entities, or their employees, officers, or directors;

        d.    a written certification by each of the candidates that he/she has notified any clients that the candidate represents in a matter involving the Criminal Division, Fraud Section or the U.S. Attorney's Office for the District of Massachusetts (or any other Department component handling the monitor selection process), and that the candidate has either obtained a waiver from those clients or has withdrawn as counsel in the other matter(s); and

        e.    A statement identifying the monitor candidate that is the Company's first, second, and third choice to serve as the monitor.

15.    The Monitor candidates or their team members shall have, at a minimum, the following qualifications:

        a.    demonstrated expertise with respect to U.S. anti-fraud laws, government contracting, and the Truthful Cost or Pricing Data Act, formerly known as TINA, 10 U.S.C. §§ 3701-3708; 41 U.S.C. §§ 3501-3508, including experience counseling on these issues;

        b.    experience designing and/or reviewing corporate compliance policies, procedures and internal controls;

        c.    the ability to access and deploy resources as necessary to discharge the Monitor's duties as described in the Agreement; and

        d.    sufficient independence from the Company to ensure effective and impartial performance of the Monitor's duties as described in the Agreement.

16.    The Fraud Section and the Office retain the right, in their sole discretion, to choose the Monitor from among the candidates proposed by the Company though the Company may express its preference(s) among the candidates.  Monitor selections shall be made in

keeping with the Department's commitment to diversity and inclusion.  If the Fraud Section and the Office determine, in their sole discretion, that any of the candidates are not, in fact, qualified to serve as the Monitor, or if the Fraud Section and the Office, in their sole discretion, are not satisfied with the candidates proposed, the Fraud Section and the Office reserve the right to request that the Company nominate additional candidates.  In the event the Fraud Section and the Office reject any proposed Monitors, the Company shall propose additional candidates within twenty (20) business days after receiving notice of the rejection so that three qualified candidates are proposed.  This process shall continue until a Monitor acceptable to both parties is chosen. The Fraud Section, the Office, and the Company will use their best efforts to complete the selection process within sixty (60) calendar days of the execution of this Agreement.  The Fraud Section and the Office retain the right to determine that the Monitor should be removed if, in the Fraud Section and the Office's sole discretion, the Monitor fails to conduct the monitorship effectively, fails to comply with this Agreement, or no longer meets the qualifications outlined in Paragraph 15 above.  If the Monitor resigns, is removed, or is otherwise unable to fulfill his or her obligations as set out herein and in Attachment D, the Company shall within twenty (20) business days recommend a pool of three qualified Monitor candidates from which the Fraud Section and the Office will choose a replacement, following the process outlined above.

17.     The Monitor's term shall be three years from the date on which the Monitor is retained by the Company, subject to extension or early termination as described in Paragraph 3. The Monitor's powers, duties, and responsibilities, as well as additional circumstances that may support an extension of the Monitor's term, are set forth in Attachment D.  The Company and RTX agree that they will not employ or be affiliated with the Monitor or the Monitor's firm for a period of not less than three years from the date on which the Monitor's term expires.  Nor will

the Company or RTX discuss with the Monitor or the Monitor's firm the possibility of further employment or affiliation during the Monitor's term.  Upon agreement by the parties, this prohibition will not apply to other monitorship responsibilities that the Monitor or the Monitor's firm may undertake in connection with resolutions with foreign or other domestic authorities.

### **Deferred Prosecution**

18.     In consideration of the undertakings agreed to by the Company and RTX herein, the Fraud Section and the Office agree that any prosecution of the Company for the conduct set forth in the Statement of Facts be and hereby is deferred for the Term.  To the extent there is conduct disclosed by the Company or RTX that is not set forth in the Statement of Facts, such conduct will not be exempt from further prosecution and is not within the scope of or relevant to this Agreement.

19.     The Fraud Section and the Office further agree that if the Company and RTX fully comply with all of their obligations under this Agreement, the Fraud Section and the Office will not continue the criminal prosecution against the Company described in Paragraph 1 and, at the conclusion of the Term, this Agreement shall expire.  Within six months after the Agreement's expiration, the Fraud Section and the Office shall seek dismissal with prejudice of the criminal Information filed against the Company described in Paragraph 1, and agree not to file charges in the future against the Company or RTX based on the conduct described in this Agreement and the Statement of Facts.  If, however, the Fraud Section and the Office determine during this six-month period that the Company or RTX breached the Agreement during the Term, as described in Paragraphs 20 through 24, the Fraud Section and the Office's ability to extend the Term, as described in Paragraph 3, or to pursue other remedies, including those described in Paragraphs 20 to 24 remains in full effect.

**Breach of the Agreement**

20.       If, during the Term, (a) the Company commits any felony under U.S. federal law;
(b) the Company or RTX provides in connection with this Agreement deliberately false,
incomplete, or misleading information, including in connection with its disclosure of information
about individual culpability; (c) the Company or RTX fails to cooperate as set forth in
Paragraphs 5 and 6 of this Agreement; (d) the Company and RTX fail to implement a
compliance program as set forth in Paragraphs 12 and 13 of this Agreement and Attachment C;
(e) the Company commits any acts that, had they occurred within the jurisdictional reach of the
U.S. fraud laws, would be a violation of the U.S. fraud laws; or (f) the Company or RTX
otherwise fails to completely perform or fulfill each of the Company's or RTX's obligations
under the Agreement, regardless of whether the Fraud Section and the Office become aware of
such a breach after the Term is complete, the Company or RTX shall thereafter be subject to
prosecution for any federal criminal violation of which the Fraud Section and the Office have
knowledge, including, but not limited to, the charges in the Information described in Paragraph
1, which may be pursued by the Fraud Section and the Office in the U.S. District Court for the
District of Massachusetts or any other appropriate venue.  Determination of whether the
Company or RTX has breached the Agreement and whether to pursue prosecution of the
Company shall be in the Fraud Section and the Office's sole discretion.  Any such prosecution
may be premised on information provided by the Company or RTX or the personnel of any of
the foregoing.  Any such prosecution relating to the conduct described in the Statement of Facts
or relating to conduct known to the Fraud Section and the Office prior to the date on which this
Agreement was signed that is not time-barred by the applicable statute of limitations on the date
of the signing of this Agreement may be commenced against the Company or RTX

notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company and RTX agree that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company and RTX agree that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the Fraud Section and the Office is made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

21.    In the event the Fraud Section and the Office determine that the Company or RTX has breached this Agreement, the Fraud Section and the Office agree to provide the Company and RTX with written notice of such breach prior to instituting any prosecution resulting from such breach. Within thirty days of receipt of such notice, the Company and RTX shall have the opportunity to respond to the Fraud Section and the Office in writing to explain the nature and circumstances of such breach, as well as the actions the Company and RTX have taken to address and remediate the situation, which explanation the Fraud Section and the Office shall consider in determining whether to pursue prosecution of the Company or RTX.

22.    In the event that the Fraud Section and the Office determine that the Company or RTX has breached this Agreement: (a) all statements made by or on behalf of the Company, RTX, and their subsidiaries and affiliates, to the Fraud Section and the Office or to the Court, including the Statement of Facts, and any testimony given by the Company or RTX before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in

evidence in any and all criminal proceedings brought by the Fraud Section and the Office against the Company, RTX, or their subsidiaries and affiliates; and (b) the Company, RTX, or their subsidiaries and affiliates shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company or RTX prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible.  The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, RTX, or their subsidiaries or affiliates, will be imputed to the Company, RTX, or their subsidiaries or affiliates for the purpose of determining whether the Company, RTX, or their subsidiaries or affiliates have violated any provision of this Agreement shall be in the sole discretion of the Fraud Section and the Office

23.     The Company and RTX acknowledge that the Fraud Section and the Office have made no representations, assurances, or promises concerning what sentence may be imposed by the Court if the Company or RTX breaches this Agreement, and this matter proceeds to judgment.  The Company and RTX further acknowledge that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

24.     On the date that the period of deferred prosecution specified in this Agreement expires, the Company, by the President of the Company and the Chief Financial Officer of the Company, will certify to the Fraud Section and the Office in the form of executing the document attached as Attachment E to this Agreement that the Company has met its disclosure obligations pursuant to Paragraph 6 of this Agreement.  Each certification will be deemed a material

statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519, and it will be deemed to have been made in the judicial district in which this Agreement is filed.

## **Sale, Merger, or Other Change in Corporate Form of Company**

25.     Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company and RTX agree that in the event that, during the Term, they undertake any change in corporate form, including if they sell, merge, or transfer business operations that are material to the Company's consolidated operations, or to the operations of any subsidiaries or affiliates of the Company or RTX involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.  The purchaser or successor in interest must also agree in writing that the Fraud Section and the Office's ability to determine a breach under this Agreement is applicable in full force to that entity.  The Company and RTX agree that the failure to include these provisions in the transaction will make any such transaction null and void.  The Company and RTX shall provide notice to the Fraud Section and the Office at least thirty (30) days prior to undertaking any such sale, merger, transfer, or other change in corporate form.  The Offices shall notify the Company and RTX prior to such transaction (or series of transactions) if they determine that the transaction or transactions will have the effect of circumventing or frustrating the enforcement purposes of this Agreement.  If at any time during the Term the Company or RTX engages in a transaction (or series of transactions) that has the effect of circumventing or frustrating the enforcement purposes of this

Agreement, the Fraud Section and the Office may deem it a breach of this Agreement pursuant to Paragraphs 20 through 24 of this Agreement.  Nothing herein shall restrict the Company or RTX from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Fraud Section and the Office.

### Public Statements

26.     The Company and RTX expressly agree that they shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company or RTX make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the Statement of Facts.  Any such contradictory statement shall, subject to cure rights of the Company and RTX described below, constitute a breach of this Agreement, and the Company thereafter shall be subject to prosecution as set forth in Paragraphs 20 through 24 of this Agreement.  The decision whether any public statement by any such person contradicting a fact contained in the Statement of Facts will be imputed to the Company and RTX for the purpose of determining whether they have breached this Agreement shall be at the sole discretion of the Fraud Section and the Office.  If the Fraud Section and the Office determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Fraud Section and the Office shall so notify the Company and RTX, and the Company and RTX may avoid a breach of this Agreement by publicly repudiating such statement(s) within five business days after notification.  The Company and RTX shall be

permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in the Statement of Facts provided that such defenses and claims do not contradict, in whole or in part, a statement contained in the Statement of Facts. This Paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of the Company or RTX in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of the Company or RTX.

27.     The Company and RTX agree that if they, or any of their direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company and RTX shall first consult with the Fraud Section and the Office to determine (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Fraud Section, the Office, and the Company and RTX; and (b) whether the Fraud Section and the Office have any objection to the release.

28.     The Fraud Section and the Office agree, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of the Company's and RTX's cooperation and remediation. By agreeing to provide this information to such authorities, the Fraud Section and the Office are not agreeing to advocate on behalf of the Company or RTX, but rather are agreeing to provide facts to be evaluated independently by such authorities.

## Limitations on Binding Effect of Agreement

29.     This Agreement is binding on the Company and RTX and the Fraud Section and the Office but specifically does not bind any other component of the Department of Justice, other

federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the Fraud Section and the Office will bring the cooperation of the Company and RTX and their compliance with their other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company and RTX.  If the court refuses to grant exclusion of time under the Speedy Trial Act, 18 U.S.C. § 3161(h)(2), all the provisions of this Agreement shall be deemed null and void, and the Term shall be deemed to have not begun, except that the statute of limitations for any prosecution relating to the conduct described in the Statement of Facts shall be tolled from the date on which this Agreement is signed until the date the Court refuses to grant the exclusion of time plus six months, and except for the provisions contained within Paragraph 2 of this Agreement.

### Notice

30.     Any notice to the Fraud Section and the Office under this Agreement shall be given by electronic mail and/or personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to Deputy Chief, MIMF Unit, Fraud Section, Criminal Division, U.S. Department of Justice, 1400 New York Avenue NW, Washington, DC 20005 and Chief, Securities Financial and Cyber Fraud Unit, United States Attorney's Office for the District of Massachusetts, John Joseph Moakley United States Federal Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA 02210.  Any notice to the Company and RTX under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, with copies by electronic mail, addressed to [ADDRESS OF REPRESENTATIVES].  Notice shall be effective upon actual receipt by the Fraud Section and the Office or the Company and RTX.

**Complete Agreement**

31.     This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and RTX and the Fraud Section and the Office.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Fraud Section, the Office, the attorneys for the Company and RTX and a duly authorized representative of the Company and RTX.

**AGREED:**

**FOR RAYTHEON COMPANY:**

Date: 10/9/2024                          By: _____

CHRISTOPHER MCDAVID
Vice President, General Counsel, and
Secretary
Raytheon Company


Date: _____                    By: _____

THOMAS HANUSIK
TIFFANY WYNN
RINA GASHAW
ALLISON FLEMING
Crowell & Moring LLP

## Complete Agreement

31.     This Agreement, including its attachments, sets forth all the terms of the agreement between the Company and RTX and the Fraud Section and the Office.  No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the Fraud Section, the Office, the attorneys for the Company and RTX and a duly authorized representative of the Company and RTX.

**AGREED:**

**FOR RAYTHEON COMPANY:**

Date: _____     By:     _____

CHRISTOPHER MCDAVID
Vice President, General Counsel, and
Secretary
Raytheon Company

Date:  *Oct. 9, 2024*     By:     _____

THOMAS HANUSIK
TIFFANY WYNN
RINA GASHAW
ALLISON FLEMING
Crowell & Moring LLP

**FOR RTX CORPORATION:**

Date: _Oct 9, 2024_       By: _____

RAMSARAN MAHARAJH
Executive Vice President and General
Counsel
RTX Corporation

Date: _Oct. 9, 2024_       By: _____

THOMAS HANUSIK
TIFFANY WYNN
RINA GASHAW
ALLISON FLEMING
Crowell & Moring LLP

**FOR THE DEPARTMENT OF JUSTICE, CRIMINAL DIVISION, FRAUD SECTION:**

GLENN S. LEON
Chief, Fraud Section
Criminal Division
United States Department of Justice

Date: _10/16/24_       BY: _____

LAURA CONNELLY
TAMARA LIVSHIZ
Trial Attorneys

**FOR THE U.S. ATTORNEY'S OFFICE, DISTRICT OF MASSACHUSETTS**

JOSHUA S. LEVY
Acting United States Attorney
District of Massachusetts

Date: _10/16/24_       BY: _____

BRIAN LAMACCHIA
BENJAMIN SALTZMAN
Assistant United States Attorneys

**COMPANY OFFICER'S CERTIFICATE FOR RAYTHEON COMPANY**

I have read this Agreement and carefully reviewed every part of it with outside counsel for Raytheon Company (the "Company"). I understand the terms of this Agreement and voluntarily agree, on behalf of the Company, to each of its terms. Before signing this Agreement, I consulted outside counsel for the Company. Counsel fully advised me of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of the Company. I have advised and caused outside counsel for the Company to advise the Board of Directors fully of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of the Company, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Vice President, General Counsel, and Secretary for the Company and that I have been duly authorized by the Company to execute this Agreement on behalf of the Company.

Date: _10/9/2024_

Raytheon Company

By: _____
CHRISTOPHER MCDAVID
Vice President, General Counsel, and Secretary

**COMPANY OFFICER'S CERTIFICATE FOR RTX CORPORATION**

I have read this Agreement and carefully reviewed every part of it with outside counsel for RTX Corporation ("RTX"). I understand the terms of this Agreement and voluntarily agree, on behalf of RTX, to each of its terms. Before signing this Agreement, I consulted outside counsel for RTX. Counsel fully advised me of the rights of RTX, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into this Agreement.

I have carefully reviewed the terms of this Agreement with the Board of Directors of RTX. I have advised and caused outside counsel for RTX to advise the Board of Directors fully of the rights of RTX, of possible defenses, of the Sentencing Guidelines' provisions, and of the consequences of entering into the Agreement.

No promises or inducements have been made other than those contained in this Agreement. Furthermore, no one has threatened or forced me, or to my knowledge any person authorizing this Agreement on behalf of RTX, in any way to enter into this Agreement. I am also satisfied with outside counsel's representation in this matter. I certify that I am the Executive Vice President and General Counsel for RTX and that I have been duly authorized by RTX to execute this Agreement on behalf of RTX.

Date: _OCT 9, 2024_

RTX Corporation

By: _____

RAMSARAN MAHARAJH
Executive Vice President and General Counsel

## CERTIFICATE OF COUNSEL FOR RAYTHEON COMPANY

I am counsel for Raytheon Company (the "Company") in the matter covered by this Agreement.  In connection with such representation, I have examined relevant Company documents and have discussed the terms of this Agreement with the Company Board of Directors.  Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of the Company has been duly authorized to enter into this Agreement on behalf of the Company and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of the Company and is a valid and binding obligation of the Company.  Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Vice President, General Counsel, and Secretary of the Company.  I have fully advised them of the rights of the Company, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement.  To my knowledge, the decision of the Company to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: _Oct. 9, 2024_

By: _____
THOMAS HANUSIK
CROWELL & MORING, LLP
Counsel for Raytheon Company

## CERTIFICATE OF COUNSEL FOR RTX CORPORATION

I am counsel for RTX Corporation ("RTX") in the matter covered by this Agreement.  In connection with such representation, I have examined relevant RTX documents and have discussed the terms of this Agreement with the RTX Board of Directors.  Based on our review of the foregoing materials and discussions, I am of the opinion that the representative of RTX has been duly authorized to enter into this Agreement on behalf of RTX and that this Agreement has been duly and validly authorized, executed, and delivered on behalf of RTX and is a valid and binding obligation of RTX.  Further, I have carefully reviewed the terms of this Agreement with the Board of Directors and the Executive Vice President and General Counsel of RTX.  I have fully advised them of the rights of RTX, of possible defenses, of the Sentencing Guidelines' provisions and of the consequences of entering into this Agreement.  To my knowledge, the decision of RTX to enter into this Agreement, based on the authorization of the Board of Directors, is an informed and voluntary one.

Date: _Oct. 9, 2024_

By: _____
THOMAS HANUSIK
CROWELL & MORING, LLP
Counsel for RTX Corporation